**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Fred Brown,<br><br>                  Plaintiff,<br><br>        -v-<br><br>South Shore University Hospital and Northwell Health, Inc.,<br><br>           Defendants. | 2:23-cv-6374<br>(NJC) (ST) |

## OPINION AND ORDER

NUSRAT J. CHOUDHURY, District Judge:

Plaintiff Fred Brown ("Brown") brings this action against his former employers, South Shore University Hospital ("South Shore") and Northwell Health, Inc. ("Northwell Health," and collectively, "Defendants"), alleging that the termination of his employment for failure to comply with Defendants' COVID-19 vaccination requirements constituted religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law, New York Executive Law § 290–301 ("NYSHRL"). (Am. Compl., ECF No. 8.) Brown seeks injunctive relief, declaratory relief, and compensatory and punitive damages. (*Id.* at 19–20.)

Before me is Defendants' Motion to Dismiss all claims in the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). (Mot. Dismiss, ECF No. 15.) For the reasons set forth below, Defendants' Motion to Dismiss is granted in its entirety and the Amended Complaint is dismissed.

**FACTS**

In order to evaluate Defendants' Motion to Dismiss, I accept as true all well-pled allegations in the Amended Complaint and draw all reasonable inferences in favor of Brown. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 318 n.2 (2d Cir. 2021).[1] Brown is a Respiratory Therapist and was employed by Defendants from December 2011 until February 16, 2022. (Am. Compl. ¶¶ 5, 34.)

**I.    New York's Emergency COVID-19 Vaccine Mandate**

On August 26, 2021, the New York State Department of Health ("Department of Health") issued an emergency rule directing healthcare entities, including hospitals,[2] to "continuously require" certain employees to be fully vaccinated against COVID-19. 10 N.Y. Comp. Codes R. & Regs. Tit. 10, § 2.61(c) (2021) (repealed Oct. 4, 2023) ("N.Y.C.R.R." and "Section 2.61").[3] Section 2.61 required the vaccination of:

> all persons employed or affiliated with a covered entity, whether paid or unpaid, including but not limited to employees, members of the medical and nursing staff, contract staff, students, and volunteers, who engage in activities such that if they

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, citations, footnotes, and alterations. Excerpts from the Amended Complaint and the parties' submissions are reproduced here exactly as they appear in the original documents. Errors in spelling, punctuation or grammar will not be corrected or noted.

[2] The emergency rule covered hospitals, as defined under New York Public Health Law ("N.Y. Pub. Health L.") § 2801. *See* N.Y.C.R.R. § 2.61(a)(1)(i).

[3] "It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes." *Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)); *see also Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (recognizing that, at the motion to dismiss stage, a court may consider "matters of which judicial notice may be taken"). I take judicial notice of Section 2.61 because this regulation is in the public record. I also take judicial notice of New York Public Health Law §§ 12 and 2801, which are New York State statutes and matters of public record.

were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease.

10 N.Y.C.R.R. § 2.61(a)(2); *see also id.* § 2.61(c). Section 2.61 required covered personnel at general hospitals and nursing homes to receive the first vaccine dose by September 27, 2021, and those at other facilities covered by the Rule to receive the first dose by October 7, 2021. *See id.* § 2.61(c)–(d).

Section 2.61 provided for certain medical exemptions to the vaccination requirement. *See* 10 N.Y.C.R.R. § 2.61(d)(1). It did not, however, contain any "exemption for personnel who oppose vaccination on religious or any other grounds not covered by the medical exemption." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 274 (2d Cir. 2021) (*"We The Patriots I"*), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) ("*We The Patriots II*"). Section 2.61 did not prohibit employers from providing these employees "with a reasonable accommodation *that removes the individual from the scope of the Rule.*" *We The Patriots II*, 17 F.4th at 370 (emphasis added).

## II.    The Defendants' Vaccination Requirement

On August 2, 2021, Defendants began requiring their employees to test for COVID-19 on a weekly basis. (Am. Compl. ¶ 18.) Alternatively, employees could get the COVID-19 vaccine in lieu of the weekly tests. (*Id.*) The Defendants announced that, effective September 27, 2021, it would implement a mandatory COVID-19 vaccination policy for its employees. (Am. Compl. ¶ 19.)[4]

---

[4] The Amended Complaint refers to Defendants in the plural when referring to the COVID-19 vaccination policy, except for in paragraph 19. (*Compare* Am. Compl. ¶ 66 ("Defendants' Vaccine Mandate") *with id.* ¶ 19 ("Defendant implemented a mandatory covid-19 vaccination policy effective September 27, 2021.").) Therefore, the Court understands the reference to only one Defendant in paragraph 19 to be a typographical error.

### III.    Order Temporarily Enjoining Section 2.61

On September 14, 2021, a district judge in the Northern District of New York issued a temporary restraining order that enjoined the State from enforcing Section 2.61 to require that employers deny requests for religious exemptions to the COVID-19 vaccination requirement. *See Dr. A v. Hochul*, No. 21-cv-1009, 2021 WL 4189533, at *1 (N.D.N.Y. Sept. 14, 2021) ("*Dr. A. I*").

### IV.    Brown's Request for a Religious Accommodation[5]

The Amended Complaint alleges that Brown maintains "sincerely held religious beliefs as a Christian" that "require him to refuse the covid-19 vaccines because they are produced, developed and tested with aborted fetal cells." (Am. Compl. ¶ 6.) The Amended Complaint alleges that Brown cannot "receive any of the Covid-19 vaccines without compromising his closely held religious beliefs" and that:

> [h]is faith also instructs him that vaccination is not morally obligatory in principle and therefore must be voluntary; that there is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cell lines derived from direct abortions; that he is morally required to obey his sure conscience; and that abortion is a sin and contrary to the teachings of the Bible.

(*Id.* ¶ 7.)

---

[5] As addressed *infra* Discussion Section III(B)(iii), while the Amended Complaint describes Brown's request as a request for an "accommodation," Brown asked Defendants to provide him with only one specific type of accommodation: a religious exemption to the COVID-19 vaccination requirement. *See* Am. Compl. ¶¶ 7–8, 19–21, 25, 48; *see D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023) (finding that the only "religious accommodation" sought by the plaintiff from Northwell Health was "an exemption from the COVID-19 vaccination requirement while continuing to provide direct patient care as a resident," which "would have posed an undue hardship on Defendant because it would have required it to violate" Section 2.61).

The Amended Complaint alleges that Brown "applied for a religious accommodation to the covid-19 mandate" and that he "notified the Defendants that his sincerely held religious beliefs conflicted with the Vaccine Mandate and requested a reasonable accommodation." (*Id.* ¶¶ 20, 48.) Brown "was willing to test for covid-19 every time he had to come to work, approximately three times a week" and to "wear a face covering at all times." (*Id.* ¶¶ 8, 21.) Defendants denied Plaintiffs' request for this specific accommodation—COVID-19 testing and face covering in lieu of vaccination—on the basis that doing so would impose an undue hardship upon Defendants. (*Id.* ¶ 22.) The Amended Complaint alleges that "[t]here was no dialogue between the Plaintiff and Defendants" regarding this accommodation request, and that Defendants did not at any point "engage in any sort of interactive process with Plaintiff or to determine whether Defendants could reasonably accommodate Plaintiff's sincerely held religious belief that Plaintiff could not receive the COVID-19 vaccine." (*Id.* ¶¶ 24–25; *see also* ¶ 50.)

In opposition to Defendants' Motion to Dismiss, Brown asserts that his request for an accommodation was denied on September 23, 2021, and attaches Defendants' denial letter as an exhibit. (Pl.'s Opp'n at 3, 4; Pl.'s Opp'n, Ex. A ("Northwell Health Sept. 23, 2021 Letter"), ECF No. 17-1.)[6] In this letter, Northwell Health stated that it was "in receipt of [Brown's] request for

---

[6] At the motion to dismiss stage, a court "may consider documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice." *Jajati v. JPMorgan Chase Bank, N.A.*, No. 22-cv-07676, --- F. Supp. 3d ---, 2024 WL 99659, at *2 (E.D.N.Y. Jan. 9, 2024) (citing *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020)). A document is "integral to a complaint" where the plaintiff has "(1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Id.* Here, the Amended Complaint brings religious discrimination claims alleging that Defendants' denial of Brown's accommodation request violated his rights under Title VII and the NYSHRL. (*See generally* Am. Compl.) Accordingly, because Brown had notice of Northwell Health's September 23, 2021 letter responding to his "Accommodation Status" and relied on it in framing the Amended Complaint, the letter is integral to the Amended Complaint and is properly considered in resolving Defendants' Motion to Dismiss.

a religious exemption from the New York State vaccine mandate requiring health care workers to receive their first dose of a COVID-19 vaccine by September 27." (*Id.*) The letter acknowledged that on September 14, 2021, a New York court had issued an order temporarily restraining the Department of Health from enforcing Section 2.61's prohibition on religious exemptions to the COVID-19 vaccination requirement but noted that "it is unknown whether the court's temporary order will become permanent." (*Id.*) The letter explained that while Northwell Health "underst[oo]d the rationale behind" Brown's request for a religious exemption, it was "also . . . mindful of the State's mandate as well as [Northwell Health's] operational concerns, including the safety of Northwell's patients, visitors and team members." (*Id.*) The letter stated that Northwell Health had reviewed Brown's religious exemption request "in advance of the Court's ruling in the event that Northwell is ultimately permitted to consider such religious exemption" in order to "provide clarity to you while we await the court's final determination and in an effort to address operational concerns." (*Id.*) Northwell Health determined that his request "must be denied as it would create an undue hardship." (*Id.*) It reasoned that permitting Brown to report to his position, which provides "direct patient care and/or has direct contact with the general public," while unvaccinated, posed an "unacceptable" threat to the health and safety of patients, co-workers, and visitors. (*Id.*) According to Northwell Health, "there is no alternative arrangement made that would allow [Brown] to perform the essential functions of [his] position while unvaccinated without creating an undue hardship." (*Id.*) The letter concluded by stating that "consistent with our requirements of all other Northwell Health employees," Brown was "required to receive a first dose of the COVID-19 vaccine th[at] week as a condition of continued employment." (*Id.*)

V.      **Brown's Termination**

Brown was "placed on leave" and, on February 16, 2022, Defendants terminated Brown's

employment for "failure to comply with the Vaccine Mandate." (Am. Compl. ¶¶ 34, 49.) Brown

attached to the Amended Complaint the termination letter from Northwell Health dated February

16, 2022, which stated:

> It has come to the Hospital's attention that you failed to provide the Northwell
> Health Leave of Absence Claim Center with the necessary medical documentation
> to commence your medical leave. We have made multiple attempts to contact you
> including the latest attempt January 4th, and January 25th,2022.
> Additionally, you have a refused to receive the COVID vaccinations. Please be
> advised that we will assume you are no longer interested in employment.
> Effective February 16th,2022 your employment is hereby terminated.

(Am. Compl., Ex. A ("Northwell Health Termination Letter"), ECF No. 8-1.)[7]

VI.     **Subsequent Litigation and Repeal of Section 2.61**

On October 12, 2021, the Northern District of New York issued a preliminary injunction

in *Dr. A v. Hochul*, which continued the injunction that barred New York State officials from

enforcing Section 2.61 to require employers to deny religious exemptions from the COVID-19

vaccination requirement. 567 F. Supp. 3d 362, 377–78 (N.D.N.Y. Oct. 12, 2021) ("*Dr. A II*"),

*rev'd and vacated*, *We The Patriots I*, 17 F.4th 266. On November 4, 2021, the Second Circuit

reversed and vacated the preliminary injunction. *We The Patriots I*, 17 F.4th 266, 296.

On January 13, 2023, in *Medical Professionals for Informed Consent v. Bassett*, the

Supreme Court in Onondaga County, New York, struck down Section 2.61, finding that the

regulation was beyond the Department of Health's rule-making authority, violated the separation

---

[7] Northwell Health's February 16, 2022 Termination Letter is properly considered in deciding
Defendants' Motion to Dismiss because it was attached to the Amended Complaint. *Jajati*, 2024
WL 99659, at *2; *Strock*, 982 F.3d at 63.

of powers doctrine, and was arbitrary and capricious. 185 N.Y.S.3d 578, 582, 585–86 (N.Y. Sup. Ct. 2023).

On February 27, 2023, the Appellate Division of the New York Supreme Court, Fourth Department, stayed the enforcement of the ruling in *Bassett* during the pendency of its appeal. Order, *Med. Prof. for Informed Consent, Inc. v. Bassett*, No. CA 23-00161, 2023 WL 2344242 (N.Y. App. Div. Feb. 27, 2023). On October 4, 2023, while that appeal was pending, the Department of Health repealed Section 2.61. 45 N.Y. Reg. 22 (Oct. 4, 2023).[8]

## PROCEDURAL HISTORY

Brown filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and on May 25, 2023, the EEOC issued Brown a Notice of Right to Sue. (Am. Compl. ¶ 14.)[9] On August 25, 2023, Brown initiated this action by filing the original complaint. (ECF No. 1.) On November 29, 2023, Brown filed an Amended Complaint, which is the operative complaint in this action. (Am. Compl.)

The Amended Complaint brings religious discrimination claims under Title VII for disparate treatment, failure to accommodate, and disparate impact, and brings claims under the NYSHRL for failure to accommodate and failure to engage in an interactive process and cooperative dialogue. First, the Amended Complaint alleges a Title VII "Disparate Treatment/Failure to Accommodate on the Basis of Religion" claim. (*Id.* ¶¶ 35–60.) Specifically, the Amended Complaint alleges that "Defendant made no efforts at all to accommodate

---

[8] On October 6, 2023, the appeal of *Bassett* was dismissed as moot because Section 2.61 had been repealed. *See Med. Prof. for Informed Consent, Inc. v. Bassett*, No. CA 23-00161, 2023 N.Y. Slip Op. 5052 (N.Y. App. Div. Oct. 6, 2023).

[9] Defendants do not contest that Brown exhausted his administrative remedies. (*See generally* Defs.' Mem., ECF No. 15-2.)

Plaintiff's sincerely held religious objection to the covid-19 vaccination and then terminated Plaintiff's job of over 10 years because of that conflict" and that "Defendants did not engage in an interactive process to determine the feasibility of accommodating Plaintiff." (*Id.* ¶¶ 50, 55.) Second, the Amended Complaint brings a disparate impact claim under Title VII, alleging that "the Defendants' Vaccine Mandate caused a disparate impact on the basis of religion." (*Id.* ¶ 66.) Third, the Amended Complaint alleges that Defendants discriminated against Brown on the basis of his religion in violation of the NYSHRL by failing to provide him with "a reasonable accommodation for his religious observance, practice, and belief (i.e., that he is prohibited from taking the COVID-19 vaccine), which precludes him from complying with the Vaccine Mandate," and by "fail[ing] to engage in any interactive process with Plaintiff regarding his accommodation request" and "violat[ing] Plaintiff's right to a cooperative dialogue." (*Id.* ¶¶ 86, 91, 102.)

On April 1, 2024, the Defendants served on Brown their Motion to Dismiss the Amended Complaint. (*See* ECF No. 13). On May 14, 2024, the fully-briefed Motion to Dismiss was filed with the Court. (Mot. Dismiss, ECF No. 15; Defs.' Mem., ECF No. 15-2; Pl.'s Opp'n, ECF No. 17; Defs.' Reply, ECF No. 16.)

## JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Brown brings claims under a federal statute, 42 U.S.C. § 2000e-2. The Court has supplemental jurisdiction over the state law claims alleged in the Amended Complaint under 28 U.S.C. § 1367(a) because that claim is part of the same case or controversy as the federal claim.

Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391(b)(2) because the Amended Complaint alleges that a substantial part of the events that gave rise to Brown's claims occurred in the Eastern District of New York. (Am. Compl. ¶¶ 10–11, 13.)

**DISCUSSION**

## I.    Article III Standing

The Amended Complaint seeks "injunctive and other equitable relief" for the alleged

violation of Brown's rights under Title VII, as well as "a declaratory judgment that the practices

complained of in this Complaint are unlawful and violate Title VII." (*Id.* ¶ 75; *see also id.* at 19.)

The Amended Complaint also seeks "injunctive and declaratory relief" for Defendants' alleged

violations of the NYSHRL. (*Id.* ¶ 100.)

A court has no subject matter jurisdiction to hear a claim where the plaintiff lacks

standing under Article III of the Constitution. *Cent. States Se. & Sw. Areas Health & Welfare*

*Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005); *Plante v. Dake*,

621 F. App'x 67, 69 (2d Cir. 2015). "Because the question of standing goes to the constitutional

limitations on the judicial Power of the United States," courts "are entitled at any time sua sponte

to delve into the issue of standing even if defendants do not raise the issue." *Green Haven Prison*

*Preparative Meeting of Religious Soc'y of Friends v. N.Y. Dep't of Corr. & Cmty. Supervision*,

16 F.4th 67, 78 (2d Cir. 2021). In order to establish Article III standing, a plaintiff must show:

"(1) that they suffered an injury in fact, (2) that the injury is fairly traceable to Defendants'

challenged conduct, and (3) that the injury is likely to be redressed by a favorable judicial

decision." *Soule v. Conn. Ass'n of Schs.*, 90 F.4th 34, 45 (2d Cir. 2023) (citing *Spokeo, Inc. v.*

*Robins*, 578 U.S. 330, 338 (2016)). A "plaintiff[] must demonstrate standing for each claim that

they press and for each form of relief that they seek." *Id.* (citing *TransUnion LLC v. Ramirez*,

594 U.S. 413 (2021)). Where a "plaintiff[] seek[s] injunctive or declaratory relief, they cannot

rely on past injury to satisfy the injury requirement but must show a likelihood that they will be

injured in the future." *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021). "Such an

allegation of future injury will be sufficient only if the threatened injury is certainly impending,

10

or there is a substantial risk that the harm will occur." *Id.* (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

The Amended Complaint alleges facts to support Brown's standing to seek damages for claims under Title VII and the NYSHRL. Brown has alleged an injury in fact that is traceable to Defendants' alleged conduct—the Defendants' termination of his employment as a Respiratory Therapist on February 16, 2022. Am. Compl. ¶ 5; *see Soule*, 90 F.4th at 45. If Brown were to prevail on his Title VII and NYSHRL claims, the requested damages would likely redress his injury by providing compensation for alleged harms and, with respect to punitive damages, by deterring future unlawful conduct. *See Soule*, 90 F.4th at 47 ("To satisfy the redressability element of Article III standing, a plaintiff must show that it is 'likely, as opposed to merely speculative, that the alleged injury will be redressed by a favorable decision.'") (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

The Amended Complaint fails, however, to allege any facts that support Brown's standing to seek injunctive or declaratory relief for any claims. Most significantly, it does not allege that Brown continues to sustain any injury, or that he is likely to be injured again in the future, by Defendants' alleged unlawful conduct. The Amended Complaint does not allege that, at any point after the termination of his employment, Brown asked Defendants for the opportunity to rejoin Defendants or applied to work for them in any capacity. Moreover, Section 2.61 has been repealed, 45 N.Y. Reg. 22 (Oct. 4, 2023), and the Amended Complaint does not allege that Defendants maintain the same or a similar COVID-19 vaccination requirement for employees in the role Brown performed prior to his termination or that Defendants would deny a request for religious accommodation from any such policy.

This case is therefore similar to *Dorce*, 2 F.4th 82, where the Second Circuit affirmed the dismissal of injunctive and declaratory relief claims due to plaintiffs' failure to allege ongoing or future harm that would support Article III standing. *Id.* at 88. In *Dorce*, the plaintiffs challenged a local law that authorized New York City to transfer ownership of foreclosed properties "free of charge to designated partners, who develop and manage the properties" and sought a declaration that the local law was unconstitutional. *Id.* at 87–88, 95. Although the plaintiffs alleged that properties they had owned had been foreclosed upon in rem and transferred to a third party pursuant to this local law, they failed to "demonstrate[] that they will be subject to future harm" because they "could not show that they owned property that was likely to be transferred in the future" under the law. *Id.* at 91, 93, 95. Thus, while the plaintiffs had alleged past harms, the Second Circuit held that they lacked standing to seek injunctive or declaratory relief. *Id.* at 88.

Like the *Dorce* plaintiffs, Brown has alleged that he was injured in the past by Defendants' challenged conduct—specifically, the Defendants' decision to terminate his employment—but has not alleged any current injury or facts supporting the conclusion that he faces a substantial risk of future injury or any future injury that is certainly impending. *See id.* at 95 (quoting *Susan B. Anthony List*, 573 U.S. at 158 (2014)) ("Such an allegation of future injury will be sufficient only if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.").

The Amended Complaint alleges that due to Defendants' alleged religious discrimination, Brown "suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering." (Am. Compl. ¶ 74; *see also id.* ¶ 99.) "The emotional consequences of a prior act," however, are "simply . . . not a sufficient

basis for [equitable relief] absent a real and immediate threat of future injury by the defendant." *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983).

The Amended Complaint also alleges that due to Defendants' alleged failure to accommodate under the NYSHRL, Brown "continues to suffer, substantial losses, including but not limited to the loss of past and future earnings, compensation and benefits, increases, promotions, bonuses, and other employment benefits." (Am. Compl. ¶ 98.) Because the Amended Complaint does not allege that Brown has sought reemployment with Defendants, however, any allegation that he is entitled to future income, compensation, and benefits is speculative and does not give rise to standing to seek injunctive or declaratory relief.

Finally, Brown seeks a declaration that Defendants' past conduct was "unlawful and violate[d] Title VII of the Civil Rights Act." (Am. Compl. at 19.) This relief stands in contrast to the prospective nature of relief in the form of a declaratory judgment. Decisions of this Court have emphasized that declaratory relief is prospective in nature and that Article III standing to seek such relief must be based on allegations of current or future harm. *See, e.g.*, *Guan v. Mayorkas*, 530 F. Supp. 3d 237, 255 (E.D.N.Y. 2021). Because the Amended Complaint fails to plausibly allege that Brown continues to be injured, that there is a substantial risk that future injury will occur, or that he faces threatened injury that is certainly impending, the Amended Complaint fails to establish Article III standing for Brown's claims for declaratory and injunctive relief under Title VII and the NYSHRL. *See Dorce*, 2 F.4th at 95.

Brown's declaratory and injunctive relief claims are therefore dismissed without prejudice for lack of subject matter jurisdiction. *Merck-Medco Managed Care*, 433 F.3d at 198; *Plante*, 621 F. App'x at 69; *see also Greene v. Northwell Health Inc.*, No. 23-cv-4846, 2024 WL 4287875, at *7–9 (E.D.N.Y. Sept. 25, 2024).

## II.    Brown's Abandoned Claims

Defendants argue that Brown has abandoned his Title VII disparate impact claim as well as any claim under Title VII or the NYSHRL that Defendants failed to engage in an interactive process and/or cooperative dialogue, because he failed to address any of these claims in his brief opposing Defendants' Motion to Dismiss. (Defs.' Reply at 4–5.) I agree.

Where a party is represented, "a court may, when appropriate, infer from [that] party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Farag v. XYZ Two Way Radio Serv., Inc.*, No. 22-cv-1795, 2023 WL 2770219, at *2 (2d Cir. Apr. 4, 2023) (citing *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)); *see also Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 257 (2d Cir. 2024) (finding that a plaintiff "abandoned . . . claims" that she failed to argue in response to a summary judgment motion). Accordingly, the Second Circuit has "routinely affirmed the district court's dismissal of a plaintiff's claims when the plaintiff did not discuss them in his opposition to the defendant's motion to dismiss." *Farag*, 2023 WL 2770219, at *2 (citing *Gross v. Rell*, 585 F.3d 72, 94 (2d Cir. 2009); *Elliot-Leach v. N.Y.C. Dep't of Educ.*, 710 F. App'x 449, 450 n.1 (2d Cir. 2017)).

In his opposition to Defendants' Motion to Dismiss, Brown argues that the Amended Complaint sufficiently pleads Title VII disparate treatment and failure to accommodate claims and a NYSHRL failure to accommodate claim but fails to address in any way Defendants' arguments for dismissal of the Title VII disparate impact claim or any claim that Defendants failed to engage in an interactive process/cooperative dialogue. (*See* Pl.'s Opp'n.) By failing to address in his brief Defendants' arguments for dismissal of these claims, Brown has abandoned

them. *See Farag*, 2023 WL 2770219, at *2; *Moll*, 94 F.4th at 257.[10] The abandoned Title VII disparate impact claim and failure to engage in interactive dialogue claim are therefore dismissed with prejudice. *See Farag*, 2023 WL 2770219, at *1–2 (affirming district court's dismissal of abandoned claims with prejudice); *see also Digilytic Int'l FZE v. Alchemy Fin., Inc.*, No. 20-cv-4650, 2024 WL 4008120, at *17 (S.D.N.Y. Aug. 30, 2024) (dismissing abandoned claims with prejudice).

As discussed below, however, even if Brown had not abandoned the Title VII disparate impact claim and failure to engage in interactive process/cooperative dialogue claim, the Amended Complaint fails to sufficiently allege a Title VII claim under any theory; and because the Amended Complaint fails to allege a claim over which this Court has original jurisdiction, I decline to exercise supplemental jurisdiction over the NYSHRL claims under 28 U.S.C. § 1367(c)(3).

### III.    Failure to State a Claim

Defendants argue that the Amended Complaint has failed to state a cause of action for any of Brown's claims. (*See* Defs.' Mem.) For the following reasons, Brown has failed to state a cause of action under Title VII, and I decline to exercise supplemental jurisdiction over the NYSHRL claims.

---

[10] In their memorandum in support of their Motion to Dismiss, Defendants argue that, to the extent the Amended Complaint "hint[s]" that it intends to pursue recovery under a theory of failure to engage in the interactive process/cooperative dialogue, such a claim fails because there is no such cause of action under either Title VII or the NYSHRL. (Defs.' Mem. at 4 n.4.) I do not need to reach this issue for two reasons. First, Brown did not respond to this argument in his opposition. (*See* Am. Compl.; Pl.'s Opp'n.) Second, the Amended Complaint pleads failure to engage in the interactive process/cooperative dialogue as theories in support of the NYSHRL claim, but under 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over this claim in the absence of jurisdiction over any federal claims as discussed below. *See* Am. Compl. ¶ 95; *see also infra* Discussion Section III(C).

A. Rule 12(b)(6) Standard

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Green v. Dep't of Educ.*, 16 F.4th 1070, 1076–77 (2d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs . . . ." *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2682 (2024). While "detailed factual allegations" are not required, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

B. Title VII Claims

### i. *Legal Standards for Title VII Claims*

Defendants argue that Brown has failed to state any Title VII claim against the Defendants, whether a claim challenging religious discrimination on the basis of disparate treatment, failure to reasonably accommodate Brown's religious beliefs, or disparate impact. (Defs.' Mem. at 4–16.)

Under Title VII, it is "unlawful for employers to discharge or otherwise to discriminate against any individual in his or her employment because of such individual's religion." *We The Patriots I*, 17 F.4th at 291 (quoting 42 U.S.C. § 2000e-2(a)(1)). At the pleading stage, a plaintiff can adequately plead a Title VII claim for employment discrimination on the basis of religion by alleging (1) that he "is a member of a protected class," (2) that he "was qualified" for his position, (3) that he "suffered an adverse employment action," and (4) facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023).

An employer may also be held liable under Title VII for failing "to accommodate the religious practice of their employees unless doing so would impose an undue hardship on the conduct of the employer's business." *Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023) (citing 42 U.S.C. § 2000e(j)).[11] In order to plead a Title VII claim for failure to grant a religious accommodation, a plaintiff "must plausibly allege that (1) [the plaintiff] held a bona fide religious belief conflicting with an employment requirement; (2) [the plaintiff] informed [the] employers of this belief; and (3) [the plaintiff was] disciplined for failure to comply with the conflicting employment requirement." *D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023) (citing *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)).

Once an employee establishes a *prime facie* case, the "employer must offer him or her a reasonable accommodation, unless doing so would cause the employer to suffer an undue

---

[11] "The statute defines 'religion' to include 'all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's religious observance or practice without undue hardship on the employer's business.'" *We The Patriots I*, 17 F.4th at 291 (quoting 42 U.S.C. § 2000e(j)).

hardship." *Hale v. Vidal*, No. 22-2973, 2023 WL 7211909, at *2 (2d Cir. Nov. 2, 2023) (quoting *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006)). An employer may raise the defense of an undue hardship in a pre-answer motion to dismiss "if the defense appears on the face of the complaint." *D'Cunha*, 2023 WL 7986441, at *2 (citing *Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010)).

An employee can also bring a Title VII religious discrimination claim by demonstrating that an employment practice caused a disparate impact on the basis of religion. 42 U.S.C. § 2000e-2(k)(1); *see also Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020). In order successfully plead a disparate impact religious discrimination claim, a plaintiff must allege facts that "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Mandala*, 975 F.3d at 207. At the pleading stage, "a plaintiff need not plead a *prima facie* case," but the plaintiff "must at least set forth enough factual allegations to plausibly support each of the three basic elements of a disparate impact claim." *Id.* "A disparate impact plaintiff must establish that a comparison between individuals affected and unaffected by the questioned policy reveals 'that although neutral, the policy in question imposes a significantly adverse or disproportionate impact on a protected group of individuals.'" *Rizzo v. New York City Dep't of Sanitation*, No. 23-cv-7190, 2024 WL 3274455, at *4 (S.D.N.Y. July 2, 2024) (citing *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 575 (2d Cir. 2003)).

### ii.  *Title VII Religious Discrimination Claim*

Defendants argue that the Amended Complaint fails to plausibly allege a Title VII religious discrimination claim because Brown's failure to take the COVID-19 vaccine rendered him unqualified for his position with Defendants and because the Amended Complaint does not allege facts supporting an inference of discriminatory intent. (Defs.' Mem. at 6–7.) Brown does

not address either of these arguments in his opposition brief, although he generally argues that the Amended Complaint plausibly alleges each element of a prima facie case for a Title VII disparate treatment claim. (*See* Pl.'s Opp'n.)

To be qualified for a position under Title VII, an employee must satisfy "the criteria the employer has specified for the position." *Scé v. City of New York*, No. 20-3954, 2022 WL 598974, at *1 (2d Cir. Mar. 1, 2022) (citing *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 127 (2d Cir. 2004), *abrogated on other grounds in Muldrow v. City of St. Louis*, 601 U.S. 346 (2024)); *Martin v. City Univ. of New York*, No. 17-cv-6791, 2018 WL 6510805, at *8 (S.D.N.Y. Dec. 11, 2018) (to be qualified, "an employee must not only be capable of performing the work; [he] must also satisfy the employer's conditions of employment.") (citing *Moore v. City of New York*, No. 16-cv-7358, 2018 WL 1281809, at *4 (S.D.N.Y. Mar. 8, 2018), *aff'd*, No. 18-947, 754 F. App'x 407 (2d Cir. 2018)). The Second Circuit has recognized that "[v]accination is a condition of employment in the healthcare field." *We The Patriots I*, 17 F.4th at 294; *see also Kane v. de Blasio*, 623 F. Supp. 3d 339, 363 (S.D.N.Y. 2022) (collecting cases).

District courts in this Circuit have found that where a hospital imposed a COVID-19 vaccination requirement as an employment requirement and an employee failed to comply with that requirement, the employee was not qualified for their position for purposes of bringing a Title VII employment discrimination claim. *See Haczynska v. Mount Sinai Health Sys., Inc.*, No. 23-cv-3091, 2024 WL 3178639, at *11 n.15 (E.D.N.Y. June 26, 2024); *Lake v. HealthAlliance Hosp. Broadway Campus*, No. 22-cv-656, 2024 WL 3226273, at *7 n.13 (N.D.N.Y. June 27, 2024); *Tandian v. State Univ. of New York*, 698 F. Supp. 3d 425, 439 (N.D.N.Y. 2023), *appeal dismissed*, No. 23-7984 (2d Cir. May 9, 2024).

As in those cases, the Amended Complaint here alleges that Defendants established a requirement for all employees to receive the COVID-19 vaccine effective September 27, 2021. (Am. Compl. ¶ 19; *see also* Northwell Health Sept. 23, 2021 Letter.) It further alleges that in the September 23, 2021 letter, Northwell Health stated that it "determined that permitting [Brown], as an unvaccinated team member, to report to [his] worksite that provides direct patient care and/or has direct contact with the general public poses an unacceptable health and safety threat to patients, co-workers, and visitors." (Northwell Health Sept. 23, 2021 Letter.) The February 16, 2022 letter from Northwell Health states that Brown "refused to receive the COVID vaccinations." (Northwell Health Termination Letter.)

Accordingly, as of September 27, 2021, when Defendants' vaccination requirement went into effect, Brown was not qualified for his position as a Respiratory Therapist at South Shore and Northwell Health. The Amended Complaint thus fails to state a plausible Title VII religious discrimination claim on the basis of disparate treatment. *See Haczynska*, 2024 WL 3178639, at *11 n.15; *D'Cunha*, 2023 WL 2266520, at *3. Because Brown was unqualified for his position, I need not reach the question of whether the Amended Complaint sufficiently pleads discriminatory intent such that it states a plausible Title VII religious discrimination claim based on disparate treatment.[12]

---

[12] Even if the allegations of the Amended Complaint were sufficient to show that Brown was qualified for the position, the Amended Complaint also fails to sufficiently plead Defendants' intent to discriminate against Brown on the basis of his religious beliefs. The Amended Complaint does not allege any facts that raise even a minimal inference of Defendants' intent to discriminate against Brown on the basis of his religion. It alleges that Brown was "placed on Leave and then terminated *for failure to comply with the Vaccine Mandate*," not on the basis of Brown's religion. (Am. Compl. ¶ 49 (emphasis supplied).) The Amended Complaint also alleges that Northwell Health refused to provide Brown with a religious accommodation "on basis that doing so would impose upon Defendants an undue hardship," not that Defendants acted with any intent to discriminate on the basis of Brown's religion. (*Id.* ¶ 22.) The September 23, 2021 letter

### iii.   Title VII Failure to Accommodate Claim

Defendants argue that the Title VII religious accommodation claim should be dismissed because Brown's requested accommodation, if granted, would have caused Defendants undue hardship by requiring them to violate Section 2.61. (Defs.' Mem. at 8–9.) I agree. Under a long line of opinions in this Circuit, the religious accommodation that Brown sought—an exemption from the Defendants' COVID-19 vaccination requirement while continuing to work in a position where he would "engage in activities such that if [he] were infected with COVID-19, [he] could potentially expose other covered personnel, patients or residents to the disease," 10 N.Y.C.R.R. § 2.61(a)(2)—would have posed an undue hardship to the Defendants by requiring them to violate the Department of Health's vaccination requirement set forth in Section 2.61.

Title VII "requires employers to accommodate the religious practice of their employees unless doing so would impose an undue hardship on the conduct of the employer's business." *Groff*, 600 U.S. at 453–54. In *Groff*, the Supreme Court clarified that "undue hardship is shown when a burden is *substantial in the overall context of an employer's business*." *Id.* at 468 (emphasis supplied). In so holding, the Supreme Court rejected lower courts' interpretation of a prior Supreme Court decision, *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), as having established a rule that an employer need only show that a religious accommodation posed "a *de minimis*" burden—*i.e.*, a burden that is "very small or trifling"—to establish "undue hardship." *Id.* at 468–69 ("We hold that showing 'more than a *de minimis* cost,' as that phrase is

---

from Northwell Health is consistent with these allegations, stating that Defendants "determined that permitting [Brown], as an unvaccinated team member, to report to [his] worksite that provides direct patient care and/or has direct contact with the general public poses an unacceptable health and safety threat to patients, co-workers, and visitors." (Northwell Health Sept. 23, 2021 Letter.) The only allegations that suggest any discriminatory intent towards Brown—the allegations that "Defendants terminated Plaintiff's employment because of Plaintiff's sincerely held beliefs" (Am. Compl. ¶ 2) are wholly conclusory. *Hamilton*, 3 F.4th at 91.

used in common parlance, does not suffice to establish 'undue hardship' under Title VII.

*Hardison* cannot be reduced to that one phrase."). In determining whether a requested religious accommodation imposes a substantial burden on an employer in the overall context of its business, "courts must . . . take[] into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Id.* at 470–71. An employer satisfies the "undue hardship" standard when it has shown that granting a religious accommodation "would result in substantial increased costs in relation to the conduct of its particular business." *Id.* at 470. *Groff* observed that "an accommodation's effect on co-workers may have ramifications for the conduct of the employer's business." *Id.* at 472. *Groff* further explained:

> Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations. This distinction matters. Faced with an accommodation request like Groff's, it would not be enough for an employer to conclude that forcing other employees to work overtime would constitute an undue hardship. Consideration of other options, such as voluntary shift swapping, would also be necessary.

*Id.* at 473.

In *Groff*, a United States Postal Service ("USPS") employee sought a religious accommodation that would permit him not to work on Sundays, which required his coworkers to take over his Sunday mail delivery duties. *Id.* at 455–46. After clarifying the legal standard for determining undue hardship, the Supreme Court vacated and remanded the case, holding that the Third Circuit erred in finding that permitting the plaintiff to avoid Sunday work would cause the USPS "undue hardship" by "impos[ing] on his coworkers, disrupt[ing] the workplace and workflow, and diminish[ing] employee morale." *Groff*, 600 U.S. at 456. The Supreme Court noted that the Third Circuit may have failed to account for possible accommodations that would

22

not have imposed an undue hardship, including incentive pay to encourage co-workers to cover Sunday shifts and coordination with nearby USPS stations. *Id.* at 473.

The Second Circuit applied the clarified standard set forth in *Groff* for determining whether a religious accommodation would impose an undue hardship in *D'Cunha v. Northwell Health Systems*. 2023 WL 7986441. It recognized that Title VII does not require an employer to provide the specific religious accommodation that a plaintiff prefers if granting that specific accommodation would impose an undue hardship in the context of the employer's business. *See id.* at *2–3 (citing *We The Patriots I*, 17 F.4th at 292); *see also We The Patriots II*, 17 F.4th at 370.

The Second Circuit has held that if an "employee's work assignments mean that he qualifies as 'personnel'" under Section 2.61, "[he] is covered by the Rule and [his] employer must 'continuously require' that [he] is vaccinated against COVID-19." *We The Patriots II*, 17 F.4th at 370 (citing 10 N.Y.C.R.R. § 2.61); *see also D'Cunha*, 2023 WL 7986441, at *2–3.

"Courts in this Circuit have repeatedly rejected discrimination claims that would require employers to violate Section 2.61 to accommodate a request for religious exemption or accommodation," finding that requiring an employer to violate this state law would pose an undue hardship on the employer. *Addonizio v. Nuvance Health*, No. 23-cv-1582, 2024 WL 2958795, at *7 (S.D.N.Y. June 11, 2024) (collecting cases); *see D'Cunha*, 2023 WL 7986441, at *2–3.[13] In *D'Cunha*, the Second Circuit affirmed one of these district court decisions by

---

[13] *See also Booth v. N.Y. Presbyterian Hosp.-Behav. Health Ctr.*, No. 22-cv-10114, 2024 WL 1381310, at *4 (S.D.N.Y. Mar. 29, 2024); *St. Hillaire v. Montefiore Med. Ctr.*, No. 23-cv-4763, 2024 WL 167337, at *4 (S.D.N.Y. Jan. 16, 2024); *Moore v. Montefiore Med. Ctr.*, No. 22-cv-10242, 2023 WL 7280476, at *6 (S.D.N.Y. Nov. 3, 2023); *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 509 (S.D.N.Y. June 23, 2023); *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-cv-2929, 2023 WL 3467143, at *5–6 (S.D.N.Y. May 15,

summary order. The plaintiff in *D'Cunha* was a medical resident who, like Brown, was employed by Northwell Health and was required to be vaccinated under both Section 2.61 and Northwell Health's parallel requirement. 2023 WL 7986441, at *1. The Second Circuit found that Northwell Health "could not have granted [the plaintiff's] religious-exemption request without violating [Section 2.61], exposing itself to potential penalties, and thereby suffering an undue hardship." *Id.* at *3. This ruling was consistent with the Second Circuit's decision in *We The Patriots*, which held that "Title VII does not require covered entities to provide the accommodation that Plaintiffs prefer—in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated." *Id.* (quoting *We The Patriots I*, 17 F.4th at 292).[14]

The Second Circuit decided *We The Patriots I*, 17 F.4th 266, and clarified the opinion in *We The Patriots II*, 17 F.4th 368, before the Supreme Court decided *Groff*, 600 U.S. 447. But in *D'Cunha*, the Second Circuit found that the conclusion that Northwell Health had shown it would experience undue hardship by granting an employee a religious exemption from Section 2.61's vaccination requirement was "consistent with the Supreme Court's clarification of the 'undue hardship' standard in *Groff* because the burden placed on an employer from violating a

---

2023); *Shahid-Ikhlas v. N.Y. & Presbyterian Hosp., Inc.*, 2023 WL 3628151, at *5 (S.D.N.Y. May 5, 2023); *Riley v. N.Y.C. Health and Hosps. Corp.*, No. 22-cv-2736, 2023 WL 2118073, at *4 (S.D.N.Y. Feb. 17, 2023); *Marte v. Montefiore Med. Ctr.*, No. 22-cv-03491, 2022 WL 7059182, at *3–4 (S.D.N.Y. Oct. 12, 2022).

[14] In *D'Cunha*, the Second Circuit also relied on a prior summary order in *Lowman v. NVI LCC*, 821 F. App'x 29 (2d Cir. 2020). *See D'Cunha*, 2023 WL 7986441, at *3. In *Lowman*, the Second Circuit ruled that an employer did not violate Title VII when it refused to hire an applicant who declined to provide his Social Security number because the employer's Social Security number disclosure requirement was "mandated by federal law" and the employer could not "depart from the policy to accommodate [the applicant] without suffering an undue hardship." *D'Cunha*, 2023 WL 7986441, at *3 (citing *Lowman*, 821 F. App'x at 32).

state law, like [Section 2.61] in this case, is both 'excessive' and 'unjustifiable.'" *D'Cunha*, 2023 WL 7986441, at \*3 (citing *Groff*, 600 U.S. at 469).

In *D'Cunha*, the Second Circuit also acknowledged that the Northern District of New York, in *Dr. A I*, issued a September 14, 2021 preliminary injunction barring the enforcement of Section 2.61. *Id.* at \*3 n.3 (citing *Dr. A I*, 2021 WL 4189533). It nevertheless found that this preliminary injunction "does not alter our conclusion that undue hardship existed in this case because [Section 2.61] was still valid law during the injunction period." *Id.* at \*3 n.3. Further, while Section 2.61 was repealed in 2023, the Second Circuit found that the repeal "does not change our analysis in the present case as the events at issue occurred in 2021." *Id.* at \*3 n.4.

Here, Northwell Health's September 23, 2021 letter states that Northwell Health considered Brown's position as a Respiratory Therapist to be a public-facing role that would fall under Section 2.61's definition of "personnel." (*See* Northwell Health Sept. 23, 2021 Letter.) Brown does not dispute that his position fell under the definition of "personnel" in Section 2.61. (*See* Pl.'s Opp'n.) The Amended Complaint alleges that Brown sought the same accommodation as the one sought by the plaintiffs in *We The Patriots* and *D'Cunha*—namely, to remain in a public-facing healthcare position while unvaccinated, which would have required the Defendants to violate Section 2.61. *See We The Patriots II*, 17 F.4th at 370; *D'Cunha*, 2023 WL 7986441, at \*2–3.

If the Defendants had violated Section 2.61 by granting Brown's sole requested accommodation, they would have exposed themselves to penalties under New York Public Health Laws, including the loss of their operating licenses. *See* N.Y. Pub. Health L. § 2806(1)(a)(1) ("A hospital operating certificate may be revoked, suspended, limited or annulled . . . [if] the hospital has failed to comply with the provisions of [Article 28] or rules and

25

regulations promulgated thereunder."); N.Y. Pub. Health L. § 12 ("[A]ny person who violates, disobeys or disregards any term or provision of this chapter or of any lawful notice, order or regulation pursuant thereto for which a civil penalty is not otherwise expressly prescribed by law, shall be liable to the people of the state for a civil penalty . . . ."); *see also Pastor v. Mercy Med. Ctr.*, No. 22-cv-07847, 2024 WL 3029118, at *5 (E.D.N.Y. June 17, 2024) ("A violator of Section 2.61 could suffer stringent penalties, including loss of its operating license.").

The face of the Amended Complaint and the September 23, 2021 Northwell Health letter, which Brown attached to his opposition and relied upon in drafting the Amended Complaint (*see supra* note 6), demonstrate that granting Brown an exemption from the vaccination requirement would have caused Defendants an undue hardship because it would have required them to violate a state law and face potential penalties for doing so. *D'Cunha*, 2023 WL 7986441, at *1–2; N.Y. Pub. Health L. §§ 12, 2806(1)(a)(1). The Amended Complaint thus fails to state a Title VII claim for failure to provide a religious accommodation.

Brown argues that his continued employment as a Respiratory Therapist while unvaccinated would not have caused Defendants to violate Section 2.61. (Pl.'s Opp'n at 9–11.) Brown's arguments are unpersuasive for four reasons.

First, Brown appears to argue that granting his sole requested accommodation—to continue in a public-facing role at Northwell Health while remaining unvaccinated—would not have cause Defendants to violate Section 2.61. He argues the following:

> Plaintiff has pled that he submitted a letter to Defendants detailing why his sincere religious reliefs conflict with an employment requirement. Plaintiff was terminated for failing to comply with the conflicting employment requirements because of his religious beliefs. Consequently, it would not have violated the mandate for Defendants to grant Plaintiff a religious exemption to the COVID-19 vaccination policy.

(Pl.'s Opp'n at 9.) Brown does not explain why termination for failure to comply with an employment requirement was "because of his reliefs beliefs." Additionally, despite Brown's use of the word "consequently," he does not provide any explanation for how Defendants could have complied with Section 2.61 while also permitting him to continue working as a Respiratory Therapist interacting with members of the public without receiving the COVID-19 vaccine, as Section 2.61 required.

Second, Brown argues that "[a]t the time that Plaintiff's Accommodation request was denied," on September 23, 2021, "there was no DOH Mandate" because there "was a Court Order staying the revised DOH mandate eliminating religious exemptions." (Pl.'s Opp'n at 9–10.) Brown does not cite any legal authority to support this assertion, but I understand this argument to reference that the Department of Health was temporarily enjoined from enforcing Section 2.61 from September 14, 2021 to October 12, 2021, and was then subject to a permanent injunction enjoining it from enforcing Section 2.61 from October 12, 2021 to November 4, 2021, when the Second Circuit vacated the injunction in *We The Patriots I*, 17 F.4th 266. *See Dr. A*, 2021 WL 4189533; *Dr. A II*, 567 F. Supp. 3d 362. The Second Circuit in *D'Cunha* has rejected the argument that Brown raises here: that permitting an employee to remain in a public-facing healthcare role without vaccination against COVID-19 would not result in an undue hardship for a hospital employer because a district court's preliminary injunction had enjoined New York State officials from enforcing Section 2.61 during the time period in question. *See D'Cunha*, 2023 WL 7986441, at *3 n.3 (finding that "this [preliminary] injunction does not alter our conclusion that undue hardship existed in this case because [Section 2.61] was still valid law during the injunction period"). Numerous courts in this Circuit have applied this ruling. *See, e.g.*, *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-cv-2929, 2023 WL

3467143, at *5 n.5 (S.D.N.Y. May 15, 2023); *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 511 (S.D.N.Y. 2023), *aff'd*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024); *Lake v. HealthAlliance Hosp. Broadway Campus*, No. 22-cv-656, 2024 WL 3226273, at *8 (N.D.N.Y. June 27, 2024); *see also Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 437 (S.D.N.Y. 2023) (pre-dating *D'Cunha*, but applying similar reasoning).

For example, in *Dennison v. Bon Secours Charity Health System Medical Group, P.C.*, the district court reasoned that, if a court's preliminary injunction of a state law permitted employers to ignore that state law, "employers would be required to accurately predict the outcome of litigation in order to avoid liability for discrimination on the one hand, or liability for violating state law on the other." 2023 WL 3467143, at *5 n.5. For the reasons set forth in *D'Cunha* and *Dennison*, the fact that, at the time Brown was terminated, the Northern District of New York's had issued a preliminarily injunction restraining enforcement of Section 2.61 does not change the conclusion that granting Brown's specific requested accommodation would have caused Defendants an undue hardship. *See id.*; *D'Cunha*, 2023 WL 7986441, at *3 n.3.

Third, Brown argues that his request for an "'accommodation' (*i.e.*, a blanket exemption) would NOT have required Defendants to violate the DOH Mandate" because he was willing to test for COVID-19 before coming to work each day and to wear a face mask and because he had been working without being vaccinated since December 2020. (Pl.'s Opp'n at 10; *see also* Am. Compl. ¶ 8.) Section 2.61 did not permit covered personnel to test for COVID-19 and wear a face covering in lieu of being vaccinated, so Brown's willingness to take these measures does not change my conclusion that permitting Brown to work for Defendants as a Respiratory Therapist while unvaccinated would have caused Defendants to violate Section 2.61. Furthermore, Brown's unvaccinated status between December 2020 and September 27, 2021 is irrelevant to

the question of whether Defendants would have violated Section 2.61 if they permitted Brown to continue working as a Respiratory Therapist after September 27, 2021 without receiving a COVID-19 vaccine. Section 2.61 was not enacted until August 2021 and did not take effect until September 27, 2021. 10 N.Y. Comp. Codes R. & Regs. Tit. 10, § 2.61(c) (2021) (repealed Oct. 4, 2023).

Fourth, Brown also argues that "since Defendants never discussed any potential accommodations with" him and the Amended Complaint "does not discuss potential reasonable accommodations," Defendants have failed to meet their burden to show that any accommodation would have caused Defendants undue hardship. (Pl.'s Opp'n at 12.)

In *Groff*, the Supreme Court reiterated that "Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations." *Groff*, 600 U.S. at 473. While the Amended Complaint refers to Brown's request as an "accommodation," (Am. Compl. ¶¶ 8–9), the only "accommodation" that Brown requested was to receive an exemption from the vaccination requirement and to instead submit weekly COVID-19 tests if the exemption was granted. (*Id.* ¶ 21.) Indeed, Brown describes the "accommodation request" as a "blanket exemption" in his opposition. (Pl.'s Opp'n at 10.) After the Supreme Court decided *Groff*, the Second Circuit reaffirmed that "Title VII does not require covered entities to provide the accommodation that Plaintiffs prefer—in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated." *D'Cunha*, 2024 WL 7986441, at *3 (quoting *We The Patriots I*, 17 F.4th at 292.)

The Amended Complaint does not allege that Brown was amenable to anything other than the specific accommodation he requested—continuing to perform his public-facing role as a

Respiratory Therapist while being exempt from the COVID-19 vaccination requirement. There are no factual allegations concerning his openness or qualifications for a role with Defendants that did not fall within the definition of "personnel" covered by the COVID-19 vaccination requirement.

Nor does the Amended Complaint allege that Brown's employment responsibilities could be performed remotely. To the extent that Defendants could have accommodated Brown's alleged religious belief by placing him in a remote position, courts in this Circuit have found that such an accommodation would result in an undue hardship on hospital defendants, especially in the context of the COVID-19 pandemic, because such employers would have to hire another employee to perform an employee's in-person duties. *See, e.g.*, *Conde v. Mid Hudson Reg'l Hosp. Med. Ctr.*, No. 22-cv-3085, 2024 WL 168282, at *8 (S.D.N.Y. Jan. 12, 2024). Moreover, "an employer is not required to create a position to accommodate an employee's religious beliefs." *Shahid-Ikhlas v. New York & Presbyterian Hosp., Inc.*, No. 22-cv-10643, 2023 WL 3628151, at *5 (S.D.N.Y. May 5, 2023), *report and recommendation adopted*, 2023 WL 3626435 (S.D.N.Y. May 24, 2023); *see also Robinson v. Children's Hosp. Bos.*, No. 14-cv-10263, 2016 WL 1337255, at *8 (D. Mass. Apr. 5, 2016) (collecting cases).[15]

Brown also argues that "[i]n the absence of objective medical evidence to the contrary, Defendants cannot establish . . . that granting Plaintiff an exemption would have endangered

---

[15] The case upon which Brown relies, *New York City Transit Authority v. Exec. Dep't, Div. of Human Rights*, 89 N.Y.2d 79 (N.Y. 1996), is distinguishable. In that case, as in *Groff*, the plaintiff sought a religious accommodation from mail delivery work during the Sabbath, and the New York Court of Appeals, addressing only a NYSHRL claim and not Title VII, found that there was no proof that the employer defendants took any steps to accommodate the plaintiff's religious needs, such as by extending the plaintiff's work schedule on other days to account for her inability to work on Saturdays. *Id.* at 89–90. In *New York Transit Authority*, however, unlike here, accommodating the plaintiff's request not to work on Saturdays would not require defendants to violate a state law.

anyone." (Pl.'s Opp'n at 12–13.) Defendants are not required to make such a showing because they have shown that granting Brown an exemption from the vaccination requirement would have required them to violate a state law, Section 2.61, which itself would cause them to experience an undue hardship under the *Groff* standard. *D'Cunha*, 2023 WL 7986441, at *2–3.

For these reasons, Brown's sole requested accommodation, if granted, would have caused Defendants undue hardship by requiring them to violate Section 2.61. The Amended Complaint thus fails to state a Title VII religious accommodation claim.

### iv.  *Title VII Disparate Impact Claim*

Defendants argue that the Amended Complaint fails to allege sufficient facts to support a Title VII disparate impact claim. (Defs.' Mem. at 13–16). As previously discussed, Brown does not respond to this argument, and I have deemed this claim abandoned. *See supra* Discussion Section II.

Even if Brown had not abandoned this claim, however, the Amended Complaint would fail to plead a plausible Title VII disparate impact claim. Title VII provides that "[a]n unlawful employment practice based on disparate impact is established . . . if . . . a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity . . . ." 42 U.S.C. § 2000e-2(k)(1)(A). In order to plead a religious discrimination claim based on disparate impact, a plaintiff must allege facts that "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Mandala*, 975 F.3d at 207. Regarding the second element, "[t]he complaint must identify members of a protected group that are affected by the neutral policy and then identify similarly situated persons who are unaffected by the policy." *Rizzo*, 2024

WL 3274455, at *4. "To nudge a disparate impact claim across the line from conceivable to

plausible . . . plaintiffs typically rely on statistical evidence to show a disparity in outcome

between groups." *Mandala*, 975 F.3d at 209. "[T]he statistical analysis must, at the very least,

focus on the disparity between appropriate comparator groups" by "reveal[ing] disparities

between populations that are relevant to the claim the plaintiff seeks to prove." *Id*. at 210.

The Amended Complaint alleges that the Defendants "implemented a mandatory covid-

19 vaccination policy effective September 27, 2021." (Am. Compl. ¶ 19.) It also alleges that

"[t]he Defendants' Vaccine Mandate caused a disparate impact on the basis of religion," that

"[t]hose who religiously oppose the COVID-19 vaccination were unable to continue working due

to the Vaccine Mandate," and that "those who did not religiously oppose the COVID-19

vaccination were able to continue working." (Am. Compl. ¶¶ 66, 72–73.)

These allegations satisfy the requirement to plead the first element of a Title VII disparate

impact claim—a challenged employment policy. But, for the reasons that follow, they fail to

allege facts that plausibly support the second and third elements of the claim.

First, the Amended Complaint fails to provide factual allegations supporting the existence

of a plausible disparity between members and non-members of a protected group. As a threshold

matter, it does not offer *any* factual allegations supporting the proposition that in addition to

Brown, other employees of Defendants who qualified as "personnel" covered by Section 2.61

opposed the COVID-19 vaccination requirement on religious grounds and were terminated from

their positions for failure to comply with Defendants' vaccine policy. The Amended Complaint

simply does not identify a single person other than Brown who allegedly falls into this category,

much less provide any statistics about the size of this asserted group. *See e.g.*, *Muslim v.

Sagamore Child.'s Psychiatric Ctr.*, No. 22-cv-07850, 2024 WL 3431959, at *8 (E.D.N.Y. July

15, 2024) (finding that a complaint failed to allege the existence of a disparity between Muslim applicants and non-Muslim applicants for the purposes of a Title VII disparate impact claim because the complaint did "*not* allege that there were *any* Muslim applicants aside from [plaintiff] for the Office Assistant I position or any other position") (emphasis supplied). The Amended Complaint's allegation that "[t]hose who religiously oppose the COVID-19 vaccination were unable to continue working due to the Vaccine Mandate" is conclusory and unsupported by any supporting factual allegations. (Am. Compl. ¶ 72.)

Second, the Amended Complaint offers nothing other than conclusory allegations concerning a causal relationship between the challenged employment policy and the asserted (but unsupported) existence of a disparity. (*See* Am. Compl. ¶ 66 ("The Defendants' Vaccine Mandate caused a disparate impact on the basis of religion.").) Such conclusory allegations are not taken to be true. *Hamilton*, 3 F.4th at 91. Devoid of any supporting factual allegations, such as statistics that "plausibly suggest that the challenged practice *actually* has a disparate impact," the Amended Complaint fails "[t]o nudge [the] disparate impact claim across the line from conceivable to plausible . . . ." *Mandala* at 209–10.

For all of these reasons, the Amended Complaint fails to plausibly allege a Title VII religious discrimination claim based on disparate impact.[16]

---

[16] Defendants raise two additional arguments in opposition to Brown's Title VII disparate impact claim. First, Defendants argue that the Amended Complaint alleges that Defendants' policy affects a group of persons that share a single common belief—their "religious[] oppos[ition] to the COVID-19 vaccination"—rather than a particular religious group. (Defs.' Mem. at 15.) Second, Defendants argue that their vaccine requirement was a business necessity. *Id.* at 16; *see* 42 U.S.C. § 2000e-2(k)(A)(1). Because I have found that the Amended Complaint fails to allege a Title VII disparate impact claim, I do not reach these arguments.

C. NYSHRL Claims

Defendants argue that the Amended Complaint has failed to plead a plausible claim under the NYSHRL for many of the same substantive reasons that it has failed to plead a Title VII claim. (*See e.g.*, Defs.' Mem. at 4–13.)

A district court "may decline to exercise supplemental jurisdiction over a claim [where it] has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Chinniah v. FERC*, 62 F.4th 700, 703 (2d Cir. 2023).

Here, the Amended Complaint fails to state any federal claims and the federal claims are therefore dismissed. *See supra* Discussion Section III(B). The Amended Complaint does not assert any independent basis for jurisdiction over Brown's NYSHRL claims, such as diversity jurisdiction under 28 U.S.C. § 1332(a). (*See* Am. Compl. ¶¶ 12–13.)[17] Because this case is in the early stages of litigation, I decline to exercise supplemental jurisdiction over Brown's claims under the NYSHRL. *Tang v. Grossman*, No. 22-464, 2023 WL 2229366, at *3 (2d Cir. Feb. 27,

---

[17] Nor does the Amended Complaint demonstrate that there is complete diversity between the parties as required for this Court to exercise jurisdiction under 28 U.S.C. § 1332(a). The Amended Complaint alleges that Brown "resides in the State of New York," that South Shore is a New York organization with a principal place of business in New York, and that Northwell Health is a New York corporation. (Am. Compl. ¶¶ 10–11.) These allegations are deficient in several respects. First, they fail to establish Brown's citizenship because they concern only his residence, and it is well-established that allegations of "residence alone [are] insufficient to establish domicile for jurisdictional purposes." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019); *accord RainMakers Partners LLC v. NewSpring Cap., LLC*, No. 23-899, 2024 WL 1846321, at *2 n.1 (2d Cir. Apr. 29, 2024); *Canouse v. Protext Mobility, Inc.*, No. 22-1335, 2023 WL 3490915, at *1 (2d Cir. May 17, 2023). Second, the allegations do not address Northwell Health's principal place of business, which is required to establish its citizenship as a corporation. *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012). Thus, the Court cannot conclude that Brown's citizenship is diverse from that of all Defendants as required for jurisdiction under 28 U.S.C. § 1332(a).

2023); *Klein & Co. Futures, Inc. v. Bd. Of Trade of City of New York*, 464 F.3d at 262 (2d Cir. 2006); *see also Haczynska*, 2024 WL 3178639, at *14 (declining to exercise supplemental jurisdiction over NYSHRL claim after dismissing plaintiff's Title VII religious discrimination claim due to failure to comply with hospital's vaccination requirement and collecting similar cases).

## CONCLUSION

For the reasons addressed above, Defendants' Motion to Dismiss (ECF No. 15) is granted in its entirety. The Amended Complaint's claims for injunctive and declaratory relief are dismissed without prejudice for lack of Article III standing. The Amended Complaint's Title VII religious discrimination claim for damages on the basis of disparate impact is dismissed with prejudice because Brown has abandoned this claim, and in the alternative, because the Amended Complaint fails to plausibly allege this claim under Rule 12(b)(6). The Amended Complaint's Title VII religious discrimination claims for damages on the basis of disparate treatment and failure to accommodate are dismissed with prejudice under Rule 12(b)(6) for failure to state a claim. Under 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over the Amended Complaint's claims for religious discrimination under the NYSHRL, and those claims are therefore dismissed without prejudice.

The Amended Complaint is dismissed. The Clerk of Court shall enter judgment and close this case.

Dated: Central Islip, New York
      January 10, 2025

                                 */s/ Nusrat J. Choudhury*
                                 NUSRAT J. CHOUDHURY
                                 United States District Judge